IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **4:15CR3128** |
| vs. | |
| JEFFERY S. SIKES, | **MEMORANDUM AND ORDER** |
| Defendant. | |

This matter is before the court on Defendant Jeffery S. Sikes' motion to sever, (Filing No. 43). For the reasons set forth below the motion is granted.

## BACKGROUND

A multiple count indictment was entered against Defendant on November 19, 2015. (Filing No. 1).  Counts I-IX allege Defendant engaged in a scheme to defraud real estate owners by falsely representing he had located tenants to rent various retail commercial properties located in Kearney, Nebraska and Grand Island, Nebraska. Defendant allegedly requested the developers pay him a fee for locating the supposed tenants. Defendant provided the real estate developers with instructions, via email, to wire transfer money to bank accounts owned and/or controlled by Defendant. There were, in fact, no potential tenants for the commercial properties and Defendant allegedly kept the developers' money for his own purposes. The government asserts these actions violated 18 U.S.C. §§ 1342-43.

Counts X-XII assert Defendant contacted a potential investor and falsely represented that Defendant had invested his own money and the money of family members into a new company called Vanguard R and D. He further represented that if the potential investor contributed $150,000 to the company, Defendants' financial advisor

would deposit $150,000 into an Individual Retirement Account ("IRA") for the investor. Defendant communicated with the potential investor via United States mail and electronic communications, including providing him with a false or fabricated prospectus representing the alleged IRA. The potential investor provided Defendant with $150,000 for Vanguard R and D. Defendant allegedly converted this money for his own use. The government asserts these actions violated 18 U.S.C. § 1341.

Counts XIII-XIX allege Defendant participated in a scheme to defraud a real estate company – B & J Partnership d/b/a Speedway Properties. Defendant and other persons associated with Vanguard Nebraska, a limited liability company, contacted representatives from B & J Partnership about obtaining a lease for commercial space owned by B & J in Lincoln, Nebraska. Defendant allegedly requested B & J finance $750,000 for the build out of the commercial space in question. Defendant further represented Vanguard Nebraska would guarantee all amounts owed by Vanguard under the lease agreement and promissory note. Defendant allegedly provided B & J with fictitious financial documents to further induce B & J to provide financing for Vanguard. The indictment further alleges Defendant established a contract with ADC Corporation to serve as the general contractor for the project. ADC Corporation is controlled by Defendant.

As part of the scheme, the indictment alleges Defendant, either personally or through ADC, generated and submitted false invoices and billing statements to Nebraska Land Title and Abstract, the escrow agent for the project. Upon receipt of the invoices and billing statements the escrow agent would authorize release of funds placed in the escrow account by B & J. The released funds were allegedly used for Defendant's personal use. The government asserts these actions violated 18 U.S.C. §§ 1342-43.

2

Defendant filed a motion to sever the various counts into three separate trials: one trial for counts I-IX; one for counts X-XIII; and one for counts XIII-XIX. The government objects to the motion and argues all of the counts have been properly joined and should be heard at the same trial.

ANALYSIS

In support of his motion to sever, Defendant advances two arguments: (1) The counts were not properly joined under Fed. R. Crim. P. 8(a); and (2) even if the court determines joinder was proper, the counts should be severed under Fed. R. Crim. P. 14.

Pursuant to Rule 8(a), two or more offenses may be joined for trial if they "are the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). Rule 8 is interpreted broadly in favor of joinder. "In applying the 'same or similar character' standard, the court permits joinder when the counts refer to the same time of offenses 'occurring over a relatively short period of time, and the evidence of each overlaps.'" United States v. Boyd, 180 F.3d 967, 981 (8th Cir. 1999) (quoting United States v. Lindsey, 782 F.2d 116, 117 (8th Cir. 1986)). "The decision of whether to sever a trial is left to the district court's sound discretion." United States v. Steele, 550 F.3d 693, 702 (8th Cir. 2008) (citing United States v. Lawson, 173 F.3d 666, 671 (8th Cir. 1999)).

In this case, Defendant argues the counts were not properly joined, while the government argues joinder was proper under Rule 8(a) because the alleged crimes are of the same or similar character. The alleged crimes took place, sometimes concurrently, over the course of two years. This is "relatively short period of time" for the purposes of joinder of claims. But the fact that the alleged crimes took place within a relatively short period of time is not sufficient, by itself, to make a showing that the crimes are of a same

or similar character. The government must also make a showing that the evidence from the individual fraudulent schemes will overlap at trial.

The government asserts the evidence overlaps because if the counts remain joined, the evidence of each allegedly fraudulent scheme will be admitted as evidence at trial under Fed. R. Evid. 404(b).   Rule 404(b) allows evidence of crimes, wrongs and other acts to be admitted to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." The prior acts "need not be duplicates." United States v. Thomas, 398 F.3d 1058, 1063 (8th Cir. 2005).   They must only be "sufficiently similar to support an inference of criminal intent." United States v. Lucas, 521 F.3d 861, 865 (8th Cir. 2008). The government broadly asserts that even if granted separate trials, the evidence of the separate schemes would be used to demonstrate Defendant's intent, knowledge, plan, and absence of mistake. But the government provides little in the way of specifics as to how evidence of one fraud would be relevant to trial on the other acts of fraud. While the ultimate decision of admissibility will be at the discretion of the trial court, at this stage in the proceedings, and based on the indictment, the government has presented only conclusory statements that alleged fraudulent schemes could be used for proof of anything other than Defendant's alleged propensity to commit fraud – a clearly improper purpose under the Federal Rules of Evidence.

The government also appears to argue that the claims are properly joined because they constituted a common plan or scheme. In broad terms, the counts involve some type of alleged fraud and the use of e-mail, regular mail, and/or wire transfers and alleged violations of the same or similar sections of federal statutes. Also, in broad terms, two of the alleged fraudulent schemes involved real estate. Finally, each of the alleged schemes was apparently employed for the financial gain of the defendant. But when the

transactions are given more than a cursory examination, the counts cannot be described as similar in character or as part of a common scheme or plan.

The Indictment describes three unrelated schemes to defraud three distinct sets of victims through separate and divergent means. For instance, the Counts I-IX involve Defendants alleged assertions that he was finding tenants for property owners in Kearney and Grand Island and inducing the property owners to pay him a finder's fee. Counts X–XII involve an alleged scheme to dupe an individual to invest in a "new company" in exchange for a $150,000 deposit into an investment account. And Counts XIII-XIX allege the fraudulent acquisition and use of funds provided by B & J Partnership and intended for making improvements to real property in Lincoln, Nebraska. The Indictment does not allege that these three schemes were connected in any way. While as to all three schemes, Defendant allegedly engaged in fraudulent conduct to benefit himself financially, that description applies to virtually every type of fraud. Standing alone, it does not make joinder appropriate under Rule 8(a).[1] See United States v. Recker, case no. 12cr2027, 2013 WL 785643 at *5 (E.D. Iowa March 1, 2013)(bankruptcy fraud and fraud on a grain elevator involving different victims and different modes of operation were not "same or similar" even though they were both designed to improve the defendant's financial position).

Accordingly,

IT IS ORDERED:

1)      Defendant's motion to sever (Filing No. 43) is granted.

_____

[1] Both parties also address whether Defendant would be prejudiced by the joinder of the counts. Rule 14(a) allows previously and properly joined offenses to be tried separately if consolidation of the offenses will prejudice the defendant. Fed. R. Crim. P. 14(a). Because the court has determined joinder was inappropriate under Rule 8(a), it need not discuss any potential prejudice to Defendant under Rule 14.

2)   Separate trials will be held for Counts I-IX, Counts X-XII and Counts VIII-XIX.

3)   A hearing to discuss trial scheduling will be held at 10:00 a.m. on November 30, 2016 before the undersigned magistrate judge in Courtroom 2, United States Courthouse and Federal Building, 100 Centennial Mall North, Lincoln, Nebraska. Defendant, defense counsel, and counsel for the government shall attend.

Dated this 10th day of November, 2016

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.